**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>MARIA SOCORRO FIGUEROA LUGO,<br><br>      Debtor. | CASE NO. 25-01546-MAG<br><br>Chapter 11<br><br><br>FILED & ENTERED ON 06/18/2025 |

**OPINION AND ORDER**

María Socorro Figueroa Lugo ("Debtor") filed her petition for relief under Chapter 11 of the Bankruptcy Code on April 4, 2025. (Dkt. # 1.) Pending before the court is a Motion for Relief from Stay and/or to Determine that Foreclosed Property is not part of the Bankruptcy Estate ("Motion for Relief from Stay") filed by Island Portfolio Services LLC ("Island Portfolio"), as servicer for PR Recovery and Development JV, LLC ("PR Recovery") (Dkt. # 23), Debtor's answer thereto (Dkt. # 31) and Island Portfolio's reply to Debtor's answer (Dkt. # 45). Island Portfolio argues that the real estate property in question is not part of Debtor's bankruptcy estate and, therefore, is not subject to the automatic stay. Debtor opposes and requests, in part, that the court pierce the corporate veil in her favor as she has been the alter ego of The Woman from Mallorca, Inc. ("Corporation") and extend the automatic stay to the non-debtor Corporation under 11 U.S.C. § 105(a). Debtor also argued that the Corporation was cancelled by the Puerto Rico Department of State on December 30, 2023, and that Island Portfolio had reached an agreement with Debtor and the Corporation prior to the filing of the petition, for the repayment of the amount owed, but failed to honor such agreement.

For the reasons stated below, Island Portfolio's Motion for Relief from Stay is granted.

## I.  JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), L. Civ. R. 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS AND PROCEDURAL BACKGROUND

### A. The Loan and the State Court Case

On February 7, 2013, Banco de Desarrollo Economico de Puerto Rico ("BDE"), Island Portfolio's predecessor in interest, granted the Corporation certain credit facilities in the total amount of $1,493,286 ("Loan"). On the same date, the Corporation executed a mortgage note in the amount of $1,493,286 in favor of BDE or to its order (the "Mortgage Note") (Claims Register # 3-1, Part 7). The Mortgage Note is secured by Deed of Mortgage No. 10 executed on February 7, 2013 (the "Mortgage Deed"), which was duly registered under the Karibe system in the Property Registry of Puerto Rico. (Claims Register # 3-1, Part 3, p. 8.)

The mortgage encumbered a property described in the Spanish language as follows:

URBANA: CALLE SAN JUSTO de San Juan Antiguo. Solar: 23. Cabida: 254.08 Metros Cuadrados. Casa #23 de la Calle San Justo de esta Ciudad, terrera de piedra y azotea con un solar que mide 12.80 metros de ancho por 18.25 m de fondo y una superficie de 254.08 M.C. de las cuales hay edificados 237.28 M.C. y los 16.80 M.C. restantes están destinados a patio. Linda por la derecha entrando con la Sucesión Carbonell; por la izquierda con Felipe Hetch y por su frente con José Crespo.

The property is recorded at page 213 of volume 86 of San Juan Antiguo, property number 829, Property Registry of San Juan, First Section (the "Property"). The Property is listed on schedule A. (Dkt. # 13, p. 3.)

2

Additionally, Debtor signed an Unlimited and Continuing Guarantee, whereby she stood as a personal guarantor for the Loan. (Claims Register # 3-1, Part 8.)

On September 7, 2018, the Mortgage Note that encumbered the Property was duly endorsed in favor of PR Recovery. (Claims Register # 3-1, Part 7.) Island Portfolio, as servicer for PR Recovery, is the current holder of the Mortgage Note. (Claims Register # 3-1, Part 3, p. 8.)

On April 8, 2019, PR Recovery filed a collection of monies and foreclosure complaint (the "State Court Case") against the Corporation, Iron Sphynx, Corp. and Debtor ("Co-Debtors") with the Court of First Instance of Puerto Rico, Superior Court of San Juan. (Dkt. # 23, p. 2.) The state court entered judgment against such defendants on January 26, 2023 ("Judgment"). (Claims Register # 3-1, Part 3.) Per the Judgment the Corporation is the title owner of the Property. (Claims Register # 3-1, Part 3, p. 8.)

On November 22, 2023, Co-Debtors appealed the Judgment with the Puerto Rico Court of Appeals. The Puerto Rico Court of Appeals affirmed the Judgment, on March 27, 2024. (Dkt. # 45, Exhibit A).

On April 30, 2024, Co-Debtors filed a petition for certiorari in the Puerto Rico Supreme Court. (Dkt. # 45, Exhibit B). The Puerto Rico Supreme Court denied the petition for certiorari on May 24, 2024. (Dkt. # 45, Exhibit C). Co-Debtors moved for reconsideration of the resolution denying the petition for certiorari on June 7, 2024 (Dkt. # 45, Exhibit D), and July 18, 2024 (Dkt. # 45, Exhibit F), but both were denied by the Puerto Rico Supreme Court, on July 11, 2024, and September 13, 2024, respectively. (Dkt. # 45, Exhibits E and G). Therefore, the Judgment is final, firm and unappealable since September 13, 2024.

Upon Co-Debtors' default with the terms of the Judgment, the Puerto Rico Court of First Instance issued an Order and Writ of Execution of Judgment, on January 21, 2025, which included the foreclosure of the Property. (Claims Register # 3-1, Parts 4 and 5). The judicial sale of the Property was scheduled for April 7, 2025. (Dkt. # 23, Exhibit I, p. 21).

The judicial sale of the Property was held, as scheduled, on April 7, 2025. The Property was awarded to Island Portfolio for $1,493,286. As evidenced by the minutes of the public auction and as stated by counsel for Debtor at the hearing on the Motion for Relief from Stay, neither Debtor nor the Corporation appeared at the public sale, nor filed any document to request the stay of the same. (Dkt. # 23, Exhibit I, p. 2). Thereafter, the Marshal for the Puerto Rico Court of First Instance executed the deed of judicial sale No. 45 before Notary Public Hector F. Lebron Gonzalez, also on April 7, 2025. (Dkt. # 23, Exhibit II).

**B. The Instant Petition and the Motion for Relief from Stay**

On April 4, 2025, Debtor filed the instant petition for relief under Chapter 11 of the Bankruptcy Code. (Dkt. # 1.). On April 11, 2025, Debtor filed her Schedules and Statement of Affairs (Dkt. # 13). Debtor included the Property in Schedule A. (Dkt. # 13, p. 4).

On April 15, 2025, Debtor filed Adversary Proceeding No. 25-00019 against Island Portfolio, (the "Adversary Proceeding") claiming that the Property is part of Debtor's bankruptcy estate, that the automatic stay should be extended to the Corporation and that the foreclosure proceeding should have been stayed upon notice of Debtor's bankruptcy filing. (Dkt. #15). Island Portfolio is yet to file its answer to the complaint.

On April 24, 2025, Island Portfolio filed unsecured claim number 3, in the amount of $2,546,584.69. (Claims Register # 3-1).

On April 29, 2025, Island Portfolio filed the Motion for Relief from Stay arguing that the Property is not part of the Bankruptcy estate because its title holder at the time of the judicial sale was the Corporation and, therefore, there was no automatic stay in place at the time of the transfer of the Property by virtue of the execution of the deed of judicial sale. (Dkt. # 23).

On May 12, 2025, Debtor filed its answer to the Motion for Relief from Stay and argued that Island Portfolio violated a verbal agreement in which the Debtor was awarded a term of six months to sell the Property and repay her debt with Island Portfolio, which is the basis for the Adversary Proceeding. (Dkt. # 31.) Debtor also argued that the Motion for Relief from Stay should be held in abeyance until the resolution of the Adversary Proceeding. Debtor referred to the case of <u>Banco de Desarrollo Economico de Puerto Rico v. PR Recovery and Development JV, LLC</u>, SJ2019CV11697, in which the government of Puerto Rico is alleging that a certain loan purchase made by PR Recovery, which Debtor believes the Loan was a part of, is null and void. Debtor also argued that the Corporation has always acted as an alter ego for the Debtor for many years prior to the filing of the instant case, therefore, the Property must be considered part of Debtor's estate. Debtor moved for the extension of the automatic stay to the Corporation as a related entity under 11 U.S.C. §105(a).

On May 23, 2025, Island Portfolio filed its reply to Debtor's answer to the Motion for Relief from Stay raising *res judicata* and the <u>Rooker</u>-<u>Feldman</u> doctrine and arguing that Debtor has not met her burden to establish that she has a legal interest in the Property. (Dkt. # 45).

On May 27, 2025, the court held a preliminary hearing on the Motion for Relief from Stay and took the matter under advisement. (Dkt. # 53.)

### III. POSITIONS OF THE PARTIES

### A. Island Portfolio

Island Portfolio argues that: 1) Chapter 11 of the Bankruptcy Code does not afford the automatic stay to a co-debtor, therefore the automatic stay afforded by 11 U.S.C. § 362(a) does not apply to the non-debtor Corporation; 2) the Property always belonged to the Corporation, not the Debtor, up until the execution of the deed of judicial sale, and is therefore not part of the bankruptcy estate, adding that the state court expressly determined that the Property belonged to the Corporation, not the Debtor, therefore, this issue is *res judicata* at this juncture; 3) Puerto Rico Corporate Law does not allow a shareholder to self-pierce the corporate veil of her own corporation; 4) the fact that the Corporation may have been "cancelled" on December 30, 2023, does not *ipso facto* extinguish its legal corporate personality in a way that would have allowed the automatic transfer of the Property to its sole shareholders; and 5) even assuming *arguendo* that the automatic stay applies to the Property, there is cause for relief from the automatic stay under §362(d)(1) because the instant individual Chapter 11 petition was filed in bad faith, as a tactic to thwart the foreclosure case and avoid at any cost the judicial sale of the Property.

Additionally, in its reply to Debtor's answer to the Motion for Relief from Stay, Island Portfolio added the following arguments: 1) as a judgment creditor, Island Portfolio/PR Recovery has creditor standing to collect on the Loan under *res judicata* and/or the Rooker-Feldman doctrine; 2) 11 U.S.C. § 362(e) mandates an expedited resolution on automatic stay matters, and there are no compelling circumstances to delay in its resolution, including the adjudication of the Adversary Proceeding; 3) Debtor (as a debtor in possession) has not met her burden to establish that she has a legal interest in the Property under Puerto Rico law, and thus, that the Property is part of the bankruptcy estate. Debtor has failed to demonstrate how and when

the title of the Property was legally transferred from the Corporation to her (in her individual capacity) after January 26, 2023 (the date the Judgment was entered); and 4) equitable relief under 11 U.S.C. §105(a) is improper in this case, especially to pierce the corporate veil of a non-bankrupt co-debtor.

**B. Debtor**

Debtor argues that: 1) Island Portfolio lacks standing to collect the debt in proof of claim No. 3 (unsecured) because the validity of the sale whereby it acquired the Loan from BDE is being challenged with the Puerto Rico Court of First Instance in Cases Nos. SJ2019CV11697 and BY2020CV01413; 2) the determination of whether the Property is or is not part of the Debtor's bankruptcy estate is subject of the complaint in Adversary Proceeding No. 25-00019, and thus the relief from the automatic stay sought herein should be "stayed and held in abeyance" until that case is ultimately resolved; 3) Debtor has an interest in the Property even if it is registered under the name of the Corporation because the Corporation has become [her] alter ego and this court has equitable powers to pierce its corporate veil in favor of Debtor so that the corporate assets become her own; 4) the Corporation was cancelled by the Puerto Rico Department of State on December 30, 2023; and 5) the Corporation could not file for bankruptcy because Puerto Rico law prevents a cancelled corporation from filing bankruptcy and continue operations.

Additionally, Debtor argued that, as alleged in the Adversary Proceeding, Island Portfolio accepted a transactional offer of $2,000,000, to be paid within six months, plus $4,000 from the lease of the property and that Island Portfolio's acceptance of the public bidding for approximately $1,500,000 was an act of bad faith.

## IV.    LEGAL ISSUES

(i)      Whether the court may stay the resolution of the Motion for Relief from Stay until the resolution of the Adversary Proceeding.

(ii)     Whether the transfer of the Property by virtue of the deed of the judicial sale executed on April 7, 2025, is null and void as a violation of the automatic stay provision in the above captioned case.

(iii)    Whether Island Portfolio lacks standing as a creditor to collect on the Loan in light of the pending state court case of Banco de Desarrollo Economico de Puerto Rico v. PR Recovery and Development JV, LLC, SJ2019CV11697.

(iv)     Whether the court may extend the automatic stay to the Corporation.

(v)      Whether the alleged settlement between Debtor, the Corporation and Island Portfolio prevents the latter from obtaining the relief requested in the instant contested matter.

## V.    APPLICABLE LAW AND ANALYSIS

### (i) Whether the court may stay the resolution of the Motion from Relief from Stay until after the resolution of the Adversary Proceeding

The arguments raised as a defense to the Motion for Relief from Stay are the same arguments subject to the Adversary Proceeding filed by Debtor in this case. Debtor argued that the petitioner's motion should be stayed and held in abeyance pending the resolution of the Adversary Proceeding, which claims that, not only the property in question is property of the estate, but that the automatic stay should be extended to "The Woman from Mallorca, Inc." (Dkt. # 31, p. 3). Debtor also argued that even if the automatic stay did not apply to the Corporation, the foreclosure proceeding should have been stayed upon proper notice to Petitioner's counsel. Id. No case law to support such request was included in her motion.

8

The court agrees with Island Portfolio's position that the Bankruptcy Code imposes strict time limits for determinations on motions for relief from stay. Pursuant to 11 U.S.C. § 362(e)(1), 30 days after a request for relief from stay of any act against property of the estate, the stay terminates with respect to the party in interest making the request, unless the court, after notice and a hearing, orders the stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination. Such final hearing must be concluded not later than 30 days after the conclusion of the preliminary hearing, unless the 30-day period is extended with the consent of the parties or for a specific time which the court finds is required by compelling circumstances. Additionally, 11 U.S.C. § 362(e)(2) provides that in a case, such as this one, under Chapter 11, in which the debtor is an individual, the stay shall terminate on the date that is 60 days after the motion for relief from stay is filed, unless: (A) a final decision is rendered by the court during such 60-day period or (B) such 60-day period is extended by agreement of all parties in interest or by the court for such specific period of time as the court finds is required for good cause, as described in the findings made by the court.

"The time periods specified in the Code are quite brief and underscore the expedited nature of stay litigation." 3 Alan N. Resnick & Henry J. Sommer, <u>Collier on Bankruptcy</u> ¶ 362.08 (16th ed. 2025). "The careful drafting of section 362(e) leaves few grounds for delaying the litigation." <u>Id.</u> As provided in the statute, the court can only extend the 60-day period to make a determination on a motion for relief from stay for a "specific period of time as the court finds is required for good cause." 11 U.S.C. § 362(e)(2)(B)(ii). However, Debtor is requesting that the court stay the determination for an unknown amount of time, that is, until the Adversary Proceeding is concluded. Furthermore, Debtor states that the determination should be held in abeyance pending the outcome of the Adversary Proceeding because the same defenses raised in

9

this contested matter are the subject of the adversary. Such reasoning does not amount to good cause. The statute clearly mandates that motions for relief from stay must be disposed of expeditiously and Debtor has failed to show good cause for this court to deviate from such mandate.

**(ii) Whether the transfer of the Property by virtue of the judicial sales deed executed on April 7, 2025 is null and void as a violation of the automatic stay provision in the above captioned case**

It is uncontested that the titleholder of the Property has always been the Corporation and not Debtor. The Corporation did not file bankruptcy, only Debtor did, therefore the automatic stay provisions of the Bankruptcy Code only apply to Debtor and not the Corporation. However, Debtor alleges that the foreclosure of the Property should have been stayed because one of the Defendants in that case had filed for bankruptcy. Debtor also alleges that the Corporation was Debtor's alter ego, therefore she requests for this court to pierce the corporate veil in her favor. Finally, she contends that the Corporation was "cancelled" by the Puerto Rico State Department on December 30, 2023, and the Property became property of the sole stockholder, Debtor, since that date.

The court is not swayed by any of these arguments. The judicial sale took place after Debtor filed for bankruptcy, but the Property was, at that time, owned by the Corporation, which was not in bankruptcy and was thus not protected by the automatic stay provisions of the Bankruptcy Code. At the time the judicial sale took place Debtor could not have legally stopped it from occurring even if she had informed the Marshal of the filing of her petition, because the Property was not hers. The automatic stay does not protect the Corporation as a co-debtor or a co-defendant because "section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." In re Advanced Ribbons

10

& Off. Prods., Inc., 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991) ("The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate; see, e.g., In re Casgul of Nevada, Inc., 22 Bankr. 65, 66 (9th Cir. BAP 1982). It does not protect non-debtor parties or their property; see, e.g., Credit Alliance Corp. v. Williams, 851 F.2d 119, 121-22 (4th Cir. 1988); Casgul of Nevada, 22 Bankr. at 66.").

Debtor cites the case of In re Pioneer Valley Indoor Tennis Center, Inc., 20 Bankr. 884 (Bankr. D. Mass. 1982) to support her claim that the judicial sale of the Property took place in violation of the automatic stay although the titleholder of the Property was not Debtor, but the Corporation.  The court in Pioneer held that the automatic stay prevented the sale of collateral that the debtor had transferred to another party prior to the bankruptcy petition. Debtor failed to consider that the property involved in that case had always been used as part of the debtor's business operation without ownership distinction considering it had been debtor's. Nor did Debtor discuss caselaw that clearly provides that collection actions against non-debtors as guarantors are not stayed pursuant to 11 U.S.C. § 362, as cited above for example, or that if such acts against non-debtors to collect on debtors' claims were in fact stayed, 11 U.S.C. §§1201 and 1301, which extend the automatic stay in Chapter 12 and 13 cases respectively to any acts  "to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, *or that secured such debt . . .*" would be unnecessary. (Emphasis in the original). Advanced Ribbons & Office, 125 B.R. at 265.

Thus, the judicial sale and the execution of the deed of judicial sale were not in violation of the automatic stay provision of the Bankruptcy Code.

The fact that the Corporation was cancelled by the Puerto Rico State Department on December 30, 2023, does not entail the automatic transfer of its assets to the stockholders. It is

11

well known that "one of the main characteristics of a corporation is that it has a legal personality that is separate and distinct from that of its owners." Miramar Marine v. Citi Walk, 198 P.R. Dec. 684, 691, 98 P.R. Offic. Trans 55 (2017). As a legal entity, the effects of the dissolution of a corporation differ from those following the death of a natural person. It is well known that upon the death of a natural person a civil succession is born, which lacks legal personality. But when a corporation is dissolved, "it would be incorrect to conceive of the shareholders of a dissolved corporation as heirs to the assets and liabilities of the corporation." Id. at 698. As a result, Article 9.08 of the Puerto Rico General Corporations Act, P.R. Laws. Ann. tit. 14 § 3708, which is a copy of Section 278 of the Delaware General Corporation Law, 8 Del. C. § 278, provides as follows:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall continue for a three (3)-year term from such expiration or dissolution or for such longer period as the Court of First Instance (Superior Part) shall in its discretion direct for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them to settle and close their business, to discharge their liabilities and to distribute to their stockholders any remaining assets; however, not for the purpose of continuing the business for which the corporation was organized.

> With respect to any action, suit or proceeding begun by or against the corporation either prior to or within three (3) years after the date of its expiration or dissolution, the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the three (3)-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of First Instance (Superior Part).

Further, Article 9.09 of Puerto Rico's General Corporations Act, P.R. Laws. Ann. tit. 14 § 3709, which is an exact copy of Section 279 of Delaware General Corporation Law, 8 Del. C. § 279, states that when the 3-year period contemplated in Art. 9.08, of the Puerto Rico General Corporations Act, P.R. Laws. Ann. tit. 14 § 3708, expires and corporate assets remain

12

undisposed, the corporation may request the Puerto Rico Court of First Instance to appoint trustees or receivers to take charge of the corporation's property.

Delaware Courts have mentioned that the purpose of Section 278 and Section 279 of their General Corporations Law, 8 Del. C. §§ 278-279, is to allow the corporations time to wind up their affairs. Miramar Marine v. Citi Walk, 198 P.R. Dec. at 696 (quoting City Investing Co. v. Continental Cas., 624 A.2d 1191, 1195 (Del. 1993)). Hence, those sections exist under the assumption that, following dissolution "corporate assets are not transferred to the shareholders, but rather continue to belong to the corporation." Id. As such, property not allocated upon the dissolution of a corporation is not distributed among its partners in proportion to their shares but remains under the ownership of the corporation. Colón Vázquez v. Báez Pérez, 2024 TSPR 104 at *14, 2024 WL 4343583.

Debtor also argues that the Corporation is her alter ego and thus this court must pierce the corporate veil of the Corporation resulting on its assets being considered property of Debtor. Generally, a sole stockholder cannot pierce the corporate veil in the traditional legal sense because veil piercing is a remedy used against shareholders, not by them. In fact, under Puerto Rico corporate law, the stockholder of a corporation may not request the piercing of the corporate veil when the structure of the corporation is inconvenient to the stockholder in detriment of creditors. C.E. Díaz Olivo, Corporaciones, Tratado sobre Derecho Corporativo, 2da. Ed. Rev., 2018 § 4.11, p. 153.

The limited liability created by incorporation is recognized "where corporate formalities are observed, initial financing is reasonably adequate, the corporation is not formed to evade an existing obligation or statute, or to cheat, defraud or to perpetuate an injustice." Matter of P.R. Hotel Corp., 111 B.R. 22, 24 (Bankr. D.P.R. 1990). The corporation may be disregarded, also

13

known as piercing the corporate veil, only when it is an alter ego or business conduit of a person. Id.; see also, 1 William Meade Fletcher et. al., Fletcher Cyclopedia of the Law of Private Corporations, § 41.10 (perm. ed. rev. vol. 2024). The piercing of the corporate veil is "used to impose substantive liability, whether the liability is grounded in tort or contract, upon an individual for the corporation's purported liabilities." Id.

In the present case, Debtor is requesting that the court sanction an inside reverse piercing of the corporate veil, whereby the corporate veil would be disregarded "for the benefit of the *owner's* creditors, not the corporation's creditors," as opposed to an outside reverse piercing where the creditor of the corporation requests the piercing to access the owner's assets. In re Hess, 618 B.R. 13, 20 (Bankr. D.N.M. 2020); see, e.g., Floyd v. I.R.S., 151 F.3d 1295, 1298-99 (10th Cir. 1998). Except that in this case, the owner/Debtor is requesting the piercing to benefit herself and there are no allegations that the corporate structure was created to "cheat, defraud or perpetuate an injustice".

Alter ego is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form. Hess, 618 B.R. at 20; see also, Communist Party v. 522 Valencia, Inc. (1995) 35 Cal.App.4th 980, 41 Cal.Rptr.2d 618. Also, under corporate law, corporate form may be disregarded only where equity requires the action to assist a third party. Therefore, a sole shareholder may not choose to ignore the corporate entity whenever it suits his convenience. 1 Fletcher Cyclopedia on the Law of Private Corporations, § 41.10, at 397; see also, Dombrowski v. Legacy Mountain Homeowners Ass'n Inc., No. 24-12541, 2025 WL 753998, at *4 (11th Cir. Mar. 10, 2025). Hence, parties who decide to do business by means of the establishment of a corporate entity must assume the burdens thereof as well as the privileges. Id.; see also, Shapoff

14

v. Scull (1990) 222 Cal.App.3d 1457, 1470, 272 Cal. Rptr. 480 (quoting Aladdin Oil Corp. v.

Perluss (1964) 230 Cal.App.2d 603, 614, 41 Cal. Rptr. 239)).

In the present case, the Corporation was the titleholder of the Property and Debtor the

sole stockholder of the Corporation. Island Portfolio sued both, the Corporation as titleholder of

the Property and Debtor as guarantor, and the state court ordered the foreclosure of the Property.

At no time during the extended State Court Case did Debtor allege that the Property was hers,

and the state court in its rulings always recognized that the Property belonged to the Corporation.

Now that Debtor seeks the applicability of the automatic stay to the Property, she alleges that the

Corporation was her alter ego and thus she has an interest in the Property. As stated earlier, the

piercing of the corporate veil is allowed to prevent fraud or an injustice, not to perpetrate one.

Debtor is requesting that this court disregard the corporate entity to evade the consequences of

said incorporation. This court will not.

### (iii) Whether Island Portfolio lacks standing as a creditor to collect on the Loan in light of the pending state court case of Banco de Desarrollo Economico de Puerto Rico v. PR Recovery and Development JV, LLC, SJ2019CV11697

Island Portfolio argues that this court lacks subject matter jurisdiction under the Rooker-

Feldman doctrine to consider any challenge to its standing as a creditor for the Loan because this

argument was raised in the State Court Case and was fully litigated. The issue was raised on

appeal and the appeals court thoroughly discussed it in its opinion affirming the state court's

judgment and was again raised to the Supreme Court of Puerto Rico which denied the certiorari

request and the two motions for reconsideration which followed. The Puerto Rico Court of First

Instance and the Puerto Rico Court of Appeals both decided against Debtor and recognized that

the creditor had standing to file a collection action against Debtor and the Corporation.

The Rooker-Feldman doctrine, which is derived from the Supreme Court decisions in

15

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), "prohibits lower federal courts, including bankruptcy courts, from reviewing final state court judgments." In re Schwartz, 409 B.R. 240, 246–47 (B.A.P. 1st Cir. 2008). "The Rooker–Feldman doctrine precludes courts from exercising subject matter jurisdiction where the issues presented in the case are 'inextricably intertwined' with questions previously adjudicated by a state court, such that the federal district court would be in the unseemly position of reviewing a state court decision for error." Mills v. Harmon L. Offs., P.C., 344 F.3d 42, 44 (1st Cir. 2003).

The Supreme Court granted certiorari in Exxon Mobil Corp. v. Saudi Basic Indus. Corp. "to resolve conflict among the Courts of Appeals over the scope of the Rooker–Feldman doctrine." 544 U.S. 280, 291 (2005). The Supreme Court clarified that the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. "[T]he Rooker-Feldman jurisdictional bar 'is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit. Instead, the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment.'" Tyler v. Supreme Jud. Ct. of Massachusetts, 914 F.3d 47, 51 (1st Cir. 2019) (quoting Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018)). "In our First Circuit . . . the Rooker–Feldman doctrine is applicable in both district and bankruptcy courts alike." In re Vazquez, 467 B.R. 550, 555 (Bankr. D.P.R. 2012).

16

The Bankruptcy Appellate Panel for the First Circuit has found that Rooker-Feldman is applicable when: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites the federal court to review and reject the judgment; and (4) the state court judgment was rendered before the federal court proceedings began." In re Burgess, 2021 WL 2073447, at *5 (B.A.P. 1st Cir. May 21, 2021) (quoting In re Schwartz, 409 B.R. at 247)). Moreover, "[a] federal claim is 'inextricably intertwined' with state court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" In re Schwartz, 409 B.R. at 247.

The court agrees with Island Portfolio in that the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine because the claim that Island Portfolio/PR Recovery does not have creditor standing was litigated at great length in the State Court Case (including trial, intermediate and highest appellate forums) and the issue is currently final and unappealable. (Dkt. # 45, p. 4.)

In her answer to the Motion for Relief from Stay, Debtor requests that the court take judicial notice of the case of Banco de Desarrollo Economico de Puerto Rico v. PR Recovery and Development JV, LLC, SJ2019CV11697, just like it did before the State Court Case, where the Puerto Rico state court will consider whether a certain loan portfolio sale whereby PR Recovery could have acquired the Loan, was null and void. But like it was stated by Island Portfolio, the issue of standing was fully litigated and resolved by the state courts. Therefore, Debtor is complaining of injuries caused by the Puerto Rico Court of First Instance and the Puerto Rico Court of Appeals in the collection action against the Corporation and Debtor and is inviting this court to review and reject such findings.

The critical datum for applicability of the Rooker-Feldman doctrine is whether Debtor's position is, in effect, an end-run around the final state court Judgment and orders and writs for foreclosure of the Property. The court finds that it is in fact an end-run around the state court orders, which adjudicated or addressed the validity of PR Recovery's creditor standing. Thus, the Rooker-Feldman doctrine deprives the court from subject matter jurisdiction to reconsider whether PR Recovery/Island Portfolio has standing as a creditor in this case which the court stated it does.

**(iv) Whether the court may extend the automatic stay to the Corporation**

11 U.S.C § 362(a)(1) provides for an automatic stay of any judicial proceeding against the debtor, thereby protecting the debtor and not prohibiting actions against non-debtor third parties or co-defendants. 11 U.S.C. § 362(a)(1); In re Bora Bora, Inc., 424 B.R. 17, 23 (Bankr. D.P.R. 2010).

It has been recognized that the bankruptcy courts have the power to enjoin certain actions not subject to the automatic stay, such as an action against non-debtor parties, when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts. Id. (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir.1986)). These are in fact injunctions issued by a bankruptcy court under 11 U.S.C. § 105(a), after determining that the situation requires it in order to protect the interests of the bankruptcy estate. In re Cincom iOutsource, Inc., 398 B.R. 223, 227 (Bankr.S.D.Ohio 2008) (quoting Patton v. Bearden, 8 F.3d 343 (6th Cir.1993)). In sum, a request to extend the automatic stay provision of 11 U.S.C. § 362(a) to a non-debtor is an action for injunctive relief which must be brought by an adversary proceeding. Bora Bora, 424 B.R. at 24.

18

Debtor has brought such action against Island Portfolio, but no injunction has been issued at this time. In fact, any injunction entered in the case, if appropriate, will necessarily be applied prospectively, not retroactively, and the Property has been transferred already, on April 7, 2025, therefore such injunction would be moot.

**(v) Whether the alleged settlement between Debtor, the Corporation and Island Portfolio prevents the latter from obtaining the relief requested in the instant contested matter**

Debtor argues that she had reached a settlement agreement with Island Portfolio for a payment schedule on the Loan and that Island Portfolio reneged on its promise. This is a factual dispute which will require the evaluation of the evidence presented. However, while Debtor may have a cause of action against Island Portfolio's counsel for not honoring a settlement agreement, such action does not alter the outcome of the contested matter subject to this opinion. As stated by counsel for Debtor, the agreement was regarding the repayment of the debt to Island Portfolio and did not address the issues raised by the Debtor in her defense to the Motion for Relief from Stay. As such, that matter will be entertained in due time within the Adversary Proceeding.

## VI.   CONCLUSION

For the reasons stated above, the Motion for Relief from the Automatic Stay and/or for a determination that the Property is not part of the bankruptcy estate filed by Island Portfolio Services LLC (Dkt. # 23) is hereby granted.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of June 2025.

María de los Ángeles González
United States Bankruptcy Judge

19